**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re:<br><br>Great Northern Products, Ltd.,<br><br>Debtor | Chapter 11<br>Case No. 24-10112 |

**DEBTOR'S AMENDED MOTION FOR EMERGENCY DETERMINATION FOR AUTHORITY TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION, AND TO EXPRESSLY AUTHORIZE ASSOCIATED LIMITED POST-PETITION BORROWING AND FOR RELATED RELIEF**

Great Northern Products, Ltd. (the "Debtor" or "Great Northern") hereby moves for entry of an order, pursuant to Bankruptcy Code (11 U.S.C. § 101 et seq. – "Code") section 363 and 364, Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014, and Local Bankruptcy Rules 4001-2, 4001-3 and 9013-2, for the use of cash collateral of Berkshire Bank (the "Bank or the "Secured Lender") and to provide it adequate protection, and to expressly authorize associated limited post-petition borrowing through the continuation post-petition of its existing pre-petition borrowing base line of credit arrangement with the Bank.  It also moves for approval of the related relief sought herein under which it would be allowed to maintain its accounts at the Bank for a short period of time while it transitions its accounts there to another bank that, unlike the Bank, is on the U.S. Trustee's list of approved depositories.

Following discussions and negotiations, the Debtor and the Bank have agreed on the terms of a the proposed cash collateral order which is attached as Exhibit A[1] to this motion as originally filed (the "Proposed Cash Collateral Order").  The Bank and Debtor's

---
[1] References to Exhibits are to the Exhibits filed with the Original Motion.

1

discussions anticipated and that Proposed Cash Collateral Order also anticipated such pre-petition financing would continue post-petition on the same terms as had existed pre-petition financing but it did not expressly provide for such post-petition financing, and the Debtor's originally filed Motion for Use of Cash Collateral (the "Original Motion") did not expressly provide for such continuing post-petition financing. The Debtor thus hereby amends its Original Motion to expressly seek such post-petition financing.

The Debtor seeks an emergency determination on this motion for the reasons set out below.

In support of its motion, the Debtor respectfully submits the Declaration of George Nolan, the President of the Debtor, filed herewith and further states as follows:

**Introduction and Summary**

A. The Debtor seeks authority to use cash collateral from the petition date through April 26, 2024 (the "Covered Period") and to have its existing pre-petition financing arrangement continue on post-petition on the same terms as existed pre-petition. Due to its need to use cash collateral daily in the ordinary course of its business, the Debtor respectfully seeks an expedited determination on this motion.

B. The Debtor also seeks an order approving the proposed procedures in providing notice of this motion and of any hearing, or opportunity for a hearing, thereon.

**Background and Facts**

1. The Debtor filed its Chapter 11 petition on February 28, 2024. It has and intends to continue to operate and manage its business and assets as a debtor-in-possession, under Code sections 1107-1108.

2. Great Northern is a Rhode Island corporation that was formed in 1988. Its stock

2

is owned 100% by George Nolan.

3.  It owns and operates a commercial seafood business from leased premises and offices at 2700 Plainfield Pike, Cranston, Rhode Island.  It specializes in purchasing, importing, selling, marketing, distributing and exporting a variety of seafood that is harvested and processed by its partner plants in Canada, the United States and South America.  Great Northern's products include natural and wild-caught crab, shrimp, lobster, scallops, ground fish, salmon and some shellfish.

4.  Great Northern has access to various species of seafood that is sourced through suppliers in North, Central and South America, and has a substantial inventory of products in five cold storage facilities in the United States.  It is an important supplier to a number of domestic and international wholesale distributors, restaurant groups, supermarket chains, buying groups and food producers.  Most of its products are frozen, with fresh fish comprising less than 3% of its total sales.

5.  In 2018, Berkshire Bank extended an up-to $15.0 million line of credit to Great Northern. That was later amended pursuant to Amendment No. 6 to Loan and Security Agreement and Allonge and Amendment to Revolving Note dated September 18, 2023 to a revolving line of credit in the maximum amount of $5,500,000 (as so amended, the "Loan"), which is memorialized through a loan and security agreement and a line of credit note, with the Bank's all-assets security interest being perfected by UCC-1 financing statements filed with the Rhode Island Secretary of State, and with those primary loan and security documents, as most recently amended, and UCC-1 filings, being, collectively, the "Loan Documents" hereunder; and attached as <u>Exbibits B, C, D and E</u> hereto).

6.  There is a guaranty of George Nolan for the obligations under the Loan.

7.  The Small Business Administration ("SBA") holds an apparent second-position

3

security interest on all assets of the Debtor to secure obligations under a $500,000.00 Economic Injury Disaster Loan (made during the COVID epidemic), on which the Debtor's payments are current.

8. The Bank's security interest covers the cash collateral generated from all personal property related to accounts receivable, inventory, and general intangibles.

9. Advances are made under the line of credit with the Bank under a borrowing base or advance formula, the primary terms of which are: (i) 85% of eligible receivables and (ii) 60% of eligible inventory. Great Northern reports to the Bank on such advances through a daily borrowing base certificate ("BBC"), a recent copy of which (as of February 28, 2024) is attached as Exhibit F hereto. That BBC shows, for example, and at that point, a net available borrowing base of $1,349,349.90 (Exhibit F at line O) and a balance owed under the Loan of $788,934.24 (Exhibit F at line X). The Debtor seeks authority to continue post-petition with the same advance of funds arrangement as existed pre-petition. To that extent, what is sought here is approval of such post-petition financing arrangement. The Proposed Cash Collateral Order filed with the Original Motion will be modified to provide for such post-petition financing arrangement and related matters.

10. As of the petition date, the balance due on the Loan was $788,934.24. As a point of reference and demonstrating the consistent progress the Debtor has made in reducing the balance owed under the Loan, the balance owed under the Loan was $6,305,571 roughly two years ago, $8,363,330 roughly one year ago, and $3,850,037 roughly six months ago.

11. As provided in Local Rule 4001-2, the Debtor further states as follows:

(i) the Debtor's proposed budget for the use of the funds over the Covered Period (the "Budget") is attached hereto as Exhibit G;

(ii) the total or collective dollar amount of the funds requested to be used over the Covered Period, as shown in the Budget, is set out weekly in the

4

           "Total Operating Disbursements" line in the Budget.

(iii)    the economic terms of such use of funds, including but not limited to the interest rates and fees, maturity date, termination and default provisions under the Loan are as follows:

        **a.** Interest Rate of 8.47%;
        **b.** Fees of $5,000.00 for the post-petition extension of the credit facility and of $2,500.00 if the Loan is not paid in full by May 17, 2024 (per Proposed Cash Collateral Order);
        **c.** monthly servicing fee of $500.00;
        **d.** An outside termination date of August 30, 2025; and
        **e.** Customary default provisions.

(iv)    the Debtor believes that the budgeted amounts will be adequate to pay all administrative expenses due and payable during the Covered Period;

(v)    the amount of debt asserted to be owed to the Bank as of the date of the filing of this motion is: $788,934.24;

(vi)    the Debtor's assessment of the value of the collateral which secures the Bank's asserted interest is as follows:

        **a.** Cash: $13,647.50 (Note: Cash availability of $437,000 under Loan);
        **b.** Receivables: Gross/all receivables $623,117.06 (insured); $529,649.50 of "Eligible" receivables under Loan at 85%; and
        **c.** Inventory: Gross/all inventory is $2,131,022.81); $1,395,651.58 of "Eligible" receivables under Loan at 60%.

(vii)    the proposal for providing adequate protection is as follows:

        **a.** A substantial equity cushion that presently exists;
        **b.** A rollover lien on all assets;
        **c.** Payments of $150,000 over each two-week period to further reduce the obligations under the Loan, as set out in the Proposed Cash Collateral Order.

12.    As provided in Local Bankruptcy Rules 4001-2 and 4001-3, and Bankruptcy Rule 4001(c)(1)(B), the economic terms of the proposed continued financing arrangement post-petition, which are identical to those that existed pre-petition, are as follows:

    a.   Interest Rate of 8.44% (Most recent rate provided by Bank; product of calculations set out in Exhibit D to Original Motion, Sixth Amendment to Loan and Security

Agreement, section 2(a) at p. 2)

b. Fees of $5,000.00 for the post-petition extension of the credit facility and of $2,500.00 if the Loan is not paid in full by May 17, 2024 (per Proposed Cash Collateral Order);

c. Monthly servicing fee of $500.00 (per Proposed Cash Collateral Order);

d. An outside termination date of August 30, 2025; and

e. Customary default provisions, but existing unenforced financial covenant defaults.

13. The primary terms of what the pre-petition and now the proposed continuing post-petition formula for advances are as follows: (i) **85% of eligible receivables** (Exhibit C to Original Motion, definition of "Borrowing Base" at p. 3, and definition of "Eligible Receivables" at p. 7, generally receivables less than 90 days old); and (ii) **60% of eligible inventory** (Exhibit C to Original Motion, definition of "Eligible Inventory" at p. 5, generally inventory less than 18 months old; and see Exhibit D to Original Motion, Sixth Amendment to Loan and Security Agreement, section 2(b) at pp. 2-3). Great Northern has reported to the Bank on such advances through a daily borrowing base certificate (see Exhibit F to Original Motion) and the Proposed Cash Collateral order provides for such ongoing daily reporting on these elements of such borrowing base.

14. The proposed cash collateral order will be modified to expressly provide for the continuation of the advance arrangements post-petition.

15. This motion is filed due to the Debtor's ongoing need to pay payroll, rent, vendors and other items as set out in the Budget, which has been prepared by the Debtor and its financial advisors and projects out the Debtor's receipts and disbursement activity over the Covered Period, through April 26, 2024.

~~15.~~ **Argument**

16. Bankruptcy Code section 364(d)(1) authorizes the obtaining of credit post-petition

6

that is secured by an "equal lien on property of the estate" that is already subject to a lien where the debtor is "unable to obtain credit otherwise" and where "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such … equal lien is proposed to be granted." Through this continuation of financing arrangement, the Bank, through its existing security interests that the Debtor proposes to continue post-petition, would hold both the existing lien and the "equal lien on property of the estate" that is proposed.

16.17.  As the Debtor noted in the Cash Collateral Motion, and as is undisputed, it is unable to obtain credit on an unsecured basis.  The scope of the security and collateral of the Bank is not changing from what it was pre-petition, but merely being rolled over.  Further, the Bank agrees that it is being adequately protected under the terms set out in the Cash Collateral Motion and in the accompanying negotiated proposed cash collateral order.

18.    The Debtor intends to propose a Subchapter V plan.

### Argument

17.19.  Section 363(c)(2) of the Code states in relevant part that "The Trustee may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in the collateral consents; or (B) the court, after notice and a hearing, authorizes such use." This section further provides that the court may condition such use as is necessary to provide adequate protection to the entity claiming to be secured by the cash the debtor seeks to use. *Id*.  Through this motion, the Debtor seeks to use its pre-petition cash, accounts receivable and post-petition generated receivables and cash to pay its post-petition operating expenses, professional fees (subject to Court approval) and any and all other expenses deemed necessary by the Debtor for the operation of the Debtor and to finance its operation under Code sections 1107 and 1108, as well as its anticipated Subchapter V Plan.

7

18.20.  The Debtor submits that: (i) preservation of its business as a going concern and its reorganization is in the best interests of its unsecured creditors, the Bank, and other parties in interest; (ii) its pre-petition cash and receivables and its post-petition generated receivables are its only means of financing a successful reorganization; and (iii) the secured claims of the Bank are being adequately protected through what is proposed herein and in the Proposed Cash Collateral Order.  The Debtor further notes that it holds no unencumbered assets available to secure alternative financing of its continued operation, and that it would be unable to obtain unsecured credit allowable as an administrative expense under Code section 503(b)(1).

19.21.  To determine if a secured creditor is adequately protected, courts consider the value of the creditor's claim in relation to the collateral securing it.  *Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F. 3d. 1200, 1203 (1st Cir. 1995).  "The classic protection for a secured debt...is the existence of an 'equity cushion' (quoting *First Agricultural Bank v. Jug End in the Berkshires, Inc. (In re Jug End in the Berkshires, Inc*.), 46 B.R. 892, 899 (Bankr. D. Mass.  1985).

20.22.  The Bank's interests are adequately protected by the existing equity cushion and by the other proposals set out herein that provide, the Debtor submits, more than adequate protection for its interests.  As operations continue post-petition (and, from that, the creation of post-petition receivables and cash which are also to be secured to the Bank through the proposed roll-over lien), payments are proposed to be made to the Bank as provided in the Budget.

21.23.  The Proposed Cash Collateral Order and its terms have been negotiated and resolved through discussions between the Debtor and the Bank and their counsel, subject to approval of the Court, as will the final version thereof.

22.24.  Pursuant to Local Rule 9013-2(d)(2), the Debtor requests that the Court grant the relief requested in this motion on an emergency basis, for the reasons noted above.

23.25.  The Debtor will serve this motion and notice of any hearing hereon through

8

this Court's ECF System, and by phone, facsimile or electronic mail upon (a) all known secured creditors of the Debtor, and the Office of the United States Trustee. It will also later serve a copy of any order entered on this motion on its top twenty general unsecured creditors by first-class mail. It submits that it would be unfeasible (including due to a lack of fax and email addresses), would likely not be timely, and would not serve a practical purpose under the circumstances to attempt to serve a copy of this motion and of any hearing hereon on other creditors or parties in interest. In light of the relief requested herein, and the circumstances associated with it, the Debtor respectfully submits that no other or further notice is or should be required.

    WHEREFORE, the Debtor requests entry of an order, consistent with the Proposed Cash Collateral Order, allowing the use of the Secured Lender's cash collateral, and providing adequate protection to its interests, in order to continue the operation of the Debtor's business operations.

**Great Northern Products, Ltd.**

By its Attorneys,

<u>March</u> ~~February~~ 2<u>8</u>~~4~~, 2024

*/s/ Matthew J. McGowan*
Matthew J. McGowan, Esq.
Sylvia Kishfy, LLC
56 Exchange Terrace
Providence, RI  02903
mmcgowan@sklawri.com
401-205-0061 Main
401-600-0140 Direct
(Bar No. 2770)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re:<br><br>　　Great Northern Products, Ltd.,<br><br>　　　　　Debtor | Chapter 11<br>Case No. 24-10112 |

**CERTIFICATE OF SERVICE**

　　I hereby certify that I have this date electronically filed the **DEBTOR'S AMENDED MOTION FOR EMERGENCY DETERMINATION FOR AUTHORITY TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION, AND TO EXPRESSLY AUTHORIZE ASSOCIATED LIMITED POST-PETITION BORROWING AND FOR RELATED RELIEF** in this case with the Clerk of this Court using the CM/ECF System.  The following are CM/ECF System participants in this case eligible to receive notice of the filing of such paper(s) electronically:

Gary L. Donahue, Esquire　　　　　　　　　　ustpregion01.pr.ecf@usdoj.gov

Jennifer Doran, Esquire　　　　　　　　　　　jdoran@hinckleyallen.com

Joseph M. DiOrio, Esquire　　　　　　　　　　jdiorio@pldolaw.com

　　I further hereby certify that I have this date served a copy of the above-referenced paper(s) on the following non CM/ECF participants by first class mail, postage prepaid, and otherwise as indicated, at the addresses noted below:

Small Business Administration
P.O. Box 7622
Warwick, RI 02887

Small Business Administration
ATTN:  Legal
380 Westminster Street
Providence, RI 02903

March 4, 2024　　　　　　　　　　　　　　　　*/s/ Kristen German*

10

https://sklawri.sharepoint.com/sites/McGowanMatters/Shared Documents/General/Great Northern Products/Cash Collateral/Amended Mot for Authority to Use Cash Collateral and for Post-Petition Borrowing 3-4-2024 Redlined.docx

11